IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA M. AUTMAN,                )<br>                                                          )<br>            Plaintiff,                       )<br>                                                          )<br>      v.                                              )<br>                                                          )<br>NANCY A. BERRYHILL, Deputy  )<br>Commissioner of Operations of  )<br>the Social Security                          )<br>Administration,[1]                         )<br>                                                          )<br>            Defendant.                  ) | No. 16 C 6340<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Brenda Autman's ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 16] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 28] is granted.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. Her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq., and she returned to her position of record, that of Deputy Commissioner for Operations, in November 2017. In accordance with the agency's Order of Succession, Berryhill continues to lead the SSA as it awaits the nomination and confirmation of a Commissioner. https://www.ssa.gov/agency/commissioner.html (last visited Apr. 5, 2018).

# BACKGROUND

## I. Procedural History

Plaintiff filed her applications for DIB and SSI on July 18, 2012, alleging a disability onset date of March 18, 2005, due to bulging disc in neck, shoulder pain, headaches, asthma, nerve damage, and numbness in fingers and toes.[2] (R. 227–36, 254.) Her application was denied initially and again upon reconsideration. (R. 77–130.) After filing a written request for a hearing, Plaintiff appeared on November 22, 2013 before an Administrative Law Judge ("ALJ") who rescheduled the hearing so Plaintiff could obtain counsel. (R. 63–76.) A second hearing was held before the same ALJ on December 8, 2014, where Plaintiff appeared represented by counsel. (R. 31–62.) A vocational expert, Lisa Gagliano, was also present at the hearing and testified. (*Id.*) On March 27, 2015, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 9–30.) The Appeals Council ("AC") denied review on April 29, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–6.)

## II. ALJ Decision

On March 27, 2015, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 9–30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 30, 2010,

---

[2] At her administrative hearing, Plaintiff amended her onset date to December 30, 2010. (R. 37.)

her amended alleged onset date and that she met the insured status requirements of the Act through December 31, 2010. (R. 14.) At step two, the ALJ found that Plaintiff suffered from severe impairments of asthma, obesity, degenerative disc disease of the lumbar and cervical spines, chronic post-traumatic stress disorder, affective disorder previously diagnosed as depressive disorder, not otherwise specified, major depressive disorder and adjustment disorder with mixed emotions. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), (R. 15.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to several limitations.[3] At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work. (R. 22.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed including inspector/packer, bench assembler, and final inspector. (R. 22–23.) Because of this

---

[3] At this stage, the ALJ determined Plaintiff could perform light work, but:
> should avoid concentrated exposure to poorly ventilated areas and environmental irritants such as fumes, odors, dusts and gases. [Plaintiff] is moderately limited in her ability to maintain concentration, persistence or pace and therefore, functionally, she is limited to performing routine, repetitive tasks. [Plaintiff] may have no interaction with the public and only brief, superficial interaction with co-workers and supervisors.

(R. 17.)

3

determination, the ALJ found that Plaintiff is not disabled under the Act. (R. 23–24.)

## **DISCUSSION**

### III. ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

V. Analysis

Plaintiff alleges that the ALJ's decision should be remanded because: (1) he improperly evaluated the opinion evidence and (2) failed to properly credit her subjective symptom allegations. For the reasons that follow, the Court disagrees.

**A. Opinion Evidence**

**i. State Agency Consultants**

First, Plaintiff claims that the ALJ was not entitled to accord great weight to the opinions of Dr. Donna Hudspeth, Psy.D., and Dr. Howard Tin, Psy.D., the state agency consultants, because they rendered their opinions without having access to all the evidence of record, specifically the findings of her treating physician Dr.

6

Alessandra Tachauer, M.D. This argument is unsupported by the regulations. Consultants who review the record at the initial and reconsideration levels rarely review the entire record, yet the regulations allow ALJs to give significant weight to their opinions. *See* 20 C.F.R. § 404.1527(d)(1) (noting that an ALJ may rely upon, and must consider, the opinions of state agency consultants); SSR 96-6p, 1996 WL 374180, at *2 ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"). The mere fact that the ALJ accorded their decisions great weight does not result in remandable error.

Next, Plaintiff alleges that the ALJ articulated reasons for accepting Dr. Hudspeth's and Dr. Tin's opinions that they themselves did not cite. This argument misreads the ALJ's decision. The ALJ explained that he accorded great weight to the opinions of the state agency consultants because they were consistent with the longitudinal mental health treatment records, accounted for Plaintiff's subjective complaints, and were consistent with the limited and conservative mental health treatment of record. (R. 20.) Plaintiff claims these statements are medical findings based on the ALJ's own conclusions. To the contrary, they are simply statements where the ALJ explains why he accorded great weight to the state agency consultants, as is required by the regulations. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also* SSR 96-6p, at *2 ("Administrative law judges . . . are not bound by findings made by State agency or other program physicians and psychologists, but they may

7

not ignore these opinions and must explain the weight given to the opinions in their decisions.") Accordingly, no remandable error occurred at this stage.

Third, Plaintiff argues that the ALJ failed to consider the supportability of Dr. Hudspeth's and Dr. Tin's opinions, *i.e.* the amount of relevant medical evidence they presented to support their findings. *See* 20 C.F.R. § 404.1527(c)(3). Ultimately it is Plaintiff's position that the state agency consultants did not provide enough support for their decisions for the ALJ to give them great weight. This argument fails for two reasons. First, it is an example of Plaintiff reweighing the evidence which neither she, nor this Court, are permitted to do. *Elder*, 529 F.3d at 413 (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") Second, the state agency consultants listed the source and type of all the evidence which they considered and cited to specific records which supported their findings. (R. 86–87.) Furthermore, Plaintiff has not provided, and this Court has not located, any case law or regulatory authority which states that state agency consultants must explain the weight they accorded to the evidence in Plaintiff's record before the ALJ may rely on their opinions. Accordingly, the Court cannot say that the ALJ erred when he relied on their opinions.

Next, Plaintiff argues that the ALJ failed to discuss what weight he accorded to the underlying medical evidence that the state agency consultants reviewed when making their decisions. In particular, Plaintiff points out that the ALJ did not

8

articulate his consideration of Dr. Robert Prescott, Ph.D., or Dr. Mark Langgut, Psy.D.

Although this is an error that could lead to remand under the general rule, *See* 20 C.F.R. § 404.1527(c) ("we will evaluate every medical opinion we receive"), in this case it results in harmless error. The Seventh Circuit has stated that it will not remand a case to the ALJ "if it is predictable with great confidence that the agency will reinstate its decision on remand" due to the overwhelming support of the record.) *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Here, Plaintiff does not point to any evidence from Dr. Prescott or Dr. Langgut which would impact the ALJ's ultimate disability determination. In his consultative examination on November 19, 2012, Dr. Prescott found that Plaintiff suffered from post-traumatic stress disorder and depressive disorder, but did not express whether these findings would result in work-related limitations. (R. 622–29.) Similarly, in his report dated February 23, 2010, Dr. Langgut found that Plaintiff suffered from impaired judgment, major depressive disorder and personality disorder, but did not opine if the disorders would impact Plaintiff's functional abilities. (R. 392–96.) Because Plaintiff has not pointed to any evidence which would affect the ALJ's ultimate disability finding, the Court finds that no error occurred.

Moreover, the opinions of Drs. Prescott and Langgut were considered by the state agency consultants. (R. 81.) In fact, the state agency consultants specifically cited to the consultative exams from each doctor before determining that Plaintiff

9

was not disabled. (*Id.*) The ALJ then adopted the opinions of the state agency consultants. Thus, while the ALJ did not directly discuss Drs. Prescott and Langgut's opinions, they were incorporated into his ultimate finding. Based on the foregoing, the Court is confident that on remand the agency would reinstate its decision. Accordingly, we find that ALJ's error on this point was harmless.

### ii. Dr. Tachauer's

The second portion of Plaintiff's argument related to the medical evidence focuses on the opinion of Dr. Tachauer. First, Plaintiff appears to argue that Dr. Tachauer's medical opinion was entitled to controlling weight by virtue of her status as a treating physician. This proposition is directly contradictory to the regulations. *See* SSR 96-2p, 1996 WL 374188 at *2 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.")

Next, Plaintiff claims that the ALJ "cherry-picked" evidence from Dr. Tachauer's opinion which favored her disability determination while ignoring evidence to the contrary. Plaintiff then cites for several pieces of evidence from Dr. Tachauer's treatment notes that she alleges the ALJ failed to discuss.

While ALJs are prohibited from cherry-picking, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant . . . evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."), they are not required

10

to discuss every piece of evidence in the record in favor of their determinations. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("[g]enerally speaking, an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence") (internal quotation marks and citation omitted).

Generally, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Here, the ALJ did just that. First he acknowledged Dr. Tachauer's status as a treating and examining physician, but later explained that her opinion that Plaintiff was unable to work was contradicted by her own treatment notes from the same day which indicated that Plaintiff was relatively stable on medication with good attention and concentration. (R. 20.) The ALJ then compared Dr. Tachauer's opinion to other medical opinions in the record, finding that state agency consultants' opinions were more consistent with the evidence of record. (*Id.*) After this articulation, the ALJ

accorded little weight to Dr. Tachauer's opinion. Although a different adjudicator may have come to a different conclusion based on the evidence of record, the Court finds that the ALJ supported his decision with substantial evidence, and it will not be disturbed.

**B. Credibility**

Next, Plaintiff next argues that the ALJ improperly assessed her subjective symptom statements and credibility.[4] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder,* 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements

---

[4] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 25, 2014. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck,* 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin,* 775 F.3d 929, 937 (7th Cir. 2015).

Here, Plaintiff first complains that the ALJ placed more emphasis on her routine and conservative treatment than her functioning when making his disability determination. But, ALJs are allowed to consider a claimant's routine and conservative treatment as part of their credibility determination. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (affirming an ALJ's credibility analysis based on claimants activities of daily living, routine and conservative treatment, and early reports of minimal or no pain.) Accordingly, the ALJ's inclusion of this observation does not result in remandable error.

Next, Plaintiff alleges that the ALJ improperly penalized her for providing an inaccurate history to Dr. Prescott during her consultative examination. But a claimant's inability to accurately recount her treatment history is a valid reason for

13

the ALJ to discount her credibility. Importantly, Plaintiff does not claim that she was an accurate historian, but instead argues that her credibility should not be diminished by her "failure to open up about [her] issues in one appointment." (Pl.'s Br. at 13.) Because Plaintiff points to no authority for this proposition, the Court find that the ALJ did not err on this point.

Finally, Plaintiff claims the ALJ improperly concluded that her completion of EKG technician courses weigh negatively against her credibility. Specifically, the ALJ found that Plaintiff's ability to attend a group course, which lasted three hours a day, three times per week, for eighteen months, contradicted her allegations of paranoia and hallucinations. (R. 21.) This is not an error as Plaintiff' contends. *See Ellis v. Barnhart*, 384 F. Supp. 2d 1195, 1204 (N.D. Ill. Aug. 10, 2005) (finding that the ALJ's credibility determination was proper where he described evidence of the claimants daily activities and her GED courses which contradicted her symptom allegations.) In addition to the foregoing reasons, the ALJ also found that Plaintiff's activities of daily living and presentation at her administrative hearing were inconsistent with her alleged severity of pain. Because the ALJ properly support his findings, the Court will not disturb his credibility determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 16] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 28] is granted. Affirmed.

**SO ORDERED.**                  **ENTERED:**

**DATE:**    **May 15, 2018**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**